IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

NORMAN RAY WILSON,

    Plaintiff,

v.                          CASE NO. 5:11-cv-289-MP-GRJ

JOHN SEAY, and
PEGGY AUGUSTINE,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, formerly incarcerated at FCI Marianna,[1] is proceeding on a First Amended Complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and has been granted leave to proceed as a pauper. Docs. 13 and 14. Upon careful consideration of the First Amended Complaint, it is recommended that this case be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

## Plaintiff's Allegations

Plaintiff's First Amended Complaint (Doc. 14) contains very little information other than a statement that Plaintiff was denied medical attention for 26 months at Marianna FCI. Plaintiff alleges that John Seay was medical director and Peggy Augustine was the warden at the time and they denied him proper medical attention. "Medical staff" also failed to assist Plaintiff, though Seay and Augustine are the only

---

[1]The Federal BOP inmate locator website indicates Plaintiff was released on April 25, 2011, approximately two months prior to his initiation of the instant lawsuit.

named defendants. For relief, Plaintiff seeks immediate medical attention and compensation for pain and suffering. Doc. 14.

Plaintiff filed a complaint initially in the Southern District of Alabama (Doc. 1), and amended on that District's forms as ordered. Doc. 4. The case was subsequently transferred to this Court, where Plaintiff was directed to amend again because his second complaint merely stated "Lack of medical attention" "Have all paperwork stating case!" "Have worsen now upon release!" and sought financial reimbursement. Doc. 4. Plaintiff has failed to submit a proper complaint to the Court. However, in the interests of judicial economy and construing Plaintiff's *pro se* pleadings liberally, the Court will consider the attachments to Plaintiff's initial complaint in an attempt to decipher his allegations. Doc. 1.

An unsworn affidavit signed by Plaintiff on May 24, 2010 and attached to his initial complaint provides perhaps the most intelligible account of Plaintiff's claims. Plaintiff attests that on December 8, 2009, he showed his unit officer that his right foot and leg were black and blue and swollen and that he could barely walk. The officer brought Plaintiff to the lieutenant's office, who directed the officer to escort Plaintiff to health services. Upon arriving at health services, a nurse looked at his foot and leg, and said sarcastically "What do you want me to do about it?" and laughed at Plaintiff. Shortly thereafter, a physician's assistant examined Plaintiff and when he asked the P.A. what he could do, she responded he could "Run like Forest Gump." Doc. 1. pp. 12, 23. Plaintiff does not attest that he did not receive medical care on that date; a later request for administrative remedy indicates that Plaintiff sought "proper care." Doc. 1, p. 10.

*Case No: 5:11-cv-289-MP-GRJ*

Plaintiff further attests that on April 17, 2010, he went to health services and was told they did not know what to do about his condition.  Plaintiff was kept overnight and given a lubricant to put over his entire body, but it did not help.  At some point, Plaintiff consulted with John Seay, head of health services at FCI Marianna, who advised that Plaintiff's problems were caused by his shoes.  Plaintiff purchased new shoes but his problem persisted.  Plaintiff alleges that Seay was arrested for drug possession the same week he gave Plaintiff the medical advice regarding shoes.  *Id.*  Plaintiff also attached two unsigned affidavits to his initial complaint that were apparently intended to be signed by an FCI officer and lieutenant who referred Plaintiff to health services on December 8, 2009.  Doc. 1, pp. 3-4.

Prison records attached to Plaintiff's initial complaint document his treatment and grievances.  A request for administrative remedy was issued on December 8, 2009 but not turned in by Plaintiff until January 4, 2010.  Plaintiff said he waited three weeks for medical attention for his right foot, he was getting progressively worse, and he wanted proper care.  The summary of the investigation indicated that fungal medications had been administered on December 29, 2009.  Doc. 1, p. 10.  Another request for administrative remedy dated January 6, 2010 stated essentially the same facts, but Plaintiff added that the fungal medications and acetaminophen were not working and that he had been to medical five times but their answer is "what do you want me to do!"  Doc. 1, p. 11.  A response to the January 6 request indicated that Plaintiff was evaluated on February 8 and prescribed antibiotics and salicylic acid patches to help remove a callous.  Doc. 1, p. 13.

On February 10, 2010, Warden P. Augustine issued a response to Plaintiff's

administrative remedy request of January 25, 2010.  Plaintiff had requested "proper" medical treatment for his foot.  Augustine denied the request:

> A review of your medical record reveals that you have been treated with anti-fungal medications for an on-going fungal infection.  A culture was taken of your foot on February 1, 2010 which will help determine the most effective treatment for your foot.  Additionally, you will be seen by a medical doctor next week since your condition has continued to be persistent after medical treatment.

Doc. 1, p. 7.

A regional administrative remedy appeal was issued March 2, 2010, which stated:

> You allege you have a recurring infection of your right foot and you are not receiving appropriate medical attention from your healthcare providers.  As relief, you request proper medical treatment.
>
> A review of your medical records revealed you were evaluated by a Central Office MAST physician on February 8, 2010.  Upon evaluating your right foot, the Physician noted skin papules, nodules, crusts, excoriations, and soft callous of the 4th metatarsal bone area.  Your condition was diagnosed as cellulitis and prescriptions for Sulfamethoxazole/Trimeth DS and Salicylic Acid patches were written.  No evidence was found to indicate you requested additional medical treatment for this condition since the aforementioned date.

Doc. 1, p. 6.

On April 11, 2010, Plaintiff submitted an inmate request to be seen by a doctor for problems with his right leg and foot.  Doc. 1, p. 14.  On April 27, 2010, Plaintiff submitted another inmate request for medical attention because his legs and feet were aching.  Medical staff indicated on that form that an appointment was scheduled for April 28.  Doc. 1, p. 8.

## **Standard of Review**

Pursuant to 28 U.S.C. § 1915(e)(2), "notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if

*Case No: 5:11-cv-289-MP-GRJ*

the court determines that . . . the action . . . fails to state a claim upon which relief may be granted."

To state a claim for relief that will survive a motion to dismiss or screening by the Court, a plaintiff must make factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*; *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951-53 (2009) (*Twombly* "expounded the pleading standard for all civil actions," and conclusory allegations that "amount to nothing more than a formulaic recitation of the elements of a constitutional . . . claim" are "not entitled to be assumed true," and, to escape dismissal, complaint must allege facts sufficient to move claims "across the line from conceivable to plausible.").

A *pro se* litigant's allegations are entitled to the benefit of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a court does not have "license . . . to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." *GJR Investments v. County of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998) (*overruled on other grounds* by *Iqbal).*

In *Bivens*, the Supreme Court held that injured plaintiffs can bring a cause of action for damages against individual federal officers based on violations of constitutional rights. *Bivens* involved alleged violations of the Fourth Amendment, but the Supreme Court has also allowed *Bivens* actions for violations of other constitutional rights.  See *Davis v. Passman*, 442 U.S. 228 (1979) (equal protection component of the Fifth Amendment's Due Process Clause); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth

Amendment's cruel and unusual punishments clause).

A claim that a prisoner has been deprived of medical attention requires that the prisoner demonstrate (1) "an objectively serious medical need," so grave that, "if left unattended, poses a substantial risk of serious harm," and (2) that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain," and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.  *Hamm v. DeKalb County*, 774 f.2d 1567, 1575 (11th Cir. 1985); *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir.1991)*; see also Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[A]s *Estelle* teaches, the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a 'classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle* 429 U.S. at 107)); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment.  Along with all other aspects of health care, this remains a question of sound professional judgment.'") ( quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)); Chance *v. Armstrong*, 143 F.3d 698, 703 (2d Cir.1998) ( "[i]t is well-established that mere disagreement over the proper

treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.").

## Discussion

Although Plaintiff does not specifically allege a constitutional violation, it appears that he asserts an Eighth Amendment deliberate indifference claim related to the treatment of his leg and foot condition. Assuming, *arguendo*, that his condition gave rise to an objectively serious medical need, he has not alleged a deprivation of that need that is cognizable under the Eighth Amendment. According to Plaintiff's own unsworn affidavit as well records submitted in support of his initial complaint, Plaintiff received ongoing treatment for his condition, including examination by medical professionals, anti-fungal creams, salicylic acid patches, pain medication, and antibiotics. A culture was taken of his foot to determine the best course of treatment and he was kept overnight in health services and another remedy, though unsuccessful, was administered. Plaintiff was also advised that a change in footwear could assist in improving his condition. Doc. 1, pp. 3-28.

Although Plaintiff complains that prison medical personnel should have provided different treatment, the decision as to the type of treatment that is provided is a "classic example of a matter for medical judgment," that does not provide a basis for Eighth Amendment liability. *Estelle* 429 U.S. at 107 ("A medical decision not to order an x-ray,

or like measures, does not represent cruel and unusual punishment."). Even if Plaintiff had an actionable claim against Defendant Seay (or any of the healthcare providers he mentions) for medical malpractice under state law, this is insufficient to establish an Eighth Amendment violation. *Taylor v. Adams*, 221 F.3d at 1258. Plaintiff's desire for a different treatment reflects a disagreement with the medical judgment of Defendant Seay, but provides no basis for Eighth Amendment liability.

Accordingly, the Court concludes that the allegations of the complaint fail to state a claim upon which relief may be granted.

## Recommendation

In view of the foregoing, it is respectfully **RECOMMENDED** that the First Amended Complaint, Doc. 14, be **DISMISSED** pursuant to 28 U.S.C § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted..

**IN CHAMBERS**  this 12th day of December 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

*Case No: 5:11-cv-289-MP-GRJ*